IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JAMES JAY HUBER,

                    Plaintiff,

          v.                         CASE NO.  12-3175-SAC

EDITH REICHERT,
CFNP, et al.,

                    Defendants.

## O R D E R

     This complaint was filed pursuant to 28 U.S.C. § 1331 by an
inmate of the United States Penitentiary, Leavenworth, Kansas
(USPL).  Plaintiff claims that he has been denied necessary medical
treatment and seeks money damages.


## FILING FEE

     The statutory fee for filing a civil complaint in federal court
is $350.00.  Plaintiff has filed an Application to Proceed without
Prepayment of Fees (Doc. 2), and has attached an Inmate Statement
in support as statutorily mandated.  Under 28 U.S.C. § 1915(b)(1),
a plaintiff granted such leave is not relieved of the obligation to
pay the full fee of $350.00 for filing a civil action.  Instead, it
merely entitles him to proceed without prepayment of the full fee,
and requires him to pay the filing fee over time through payments

deducted automatically from his inmate trust fund account as authorized by § 1915(b)(2). Furthermore, § 1915(b)(1) requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action. Having examined the records of plaintiff's account, the court finds that the average monthly deposit to plaintiff's account during the six-month period for which information is provided was $ 61.86, and the average monthly balance was much less. The court therefore assesses an initial partial filing fee of $ 12.00, twenty percent of the average monthly deposit, rounded to the lower half dollar. Plaintiff must pay this initial partial filing fee before this action may proceed further. He will be given time to submit the fee to the court. His failure to submit the assessed partial fee within the time allotted may result in dismissal of this action without further notice.

**ALLEGATIONS AND CLAIMS**

Plaintiff names as defendants: Edith Reichert, employed as a nurse at the United States Penitentiary, Florence, Colorado (USPF); Sara Revell, Warden, USPF; unnamed Regional Director, Federal Bureau of Prisons (BOP); unnamed Director, BOP; William McCollum, employed as a doctor at the USPL; and Claude Chester, Warden, USPL. As factual support for his complaint, Mr. Huber alleges as follows. In April

of 2008, while participating in outdoor recreation at the USPF, plaintiff sustained a knee injury including "substantial cartilage damage" and a torn medial meniscus.  On April 18, 2008, he was first seen by medical staff at sick call and was "promptly sent to radiology for x-rays."  He waited but received no response for more than 4 months.[1]  On August 25, 2008, he returned to sick call because of difficulty walking and "the total ineffectiveness of the pain medication he was prescribed."  He was advised that the pain in his knee was not due to an injury but caused by "Mild Degenerative Change (arthritis)."  Plaintiff did not dispute the arthritis diagnosis, but insisted that something else must be wrong.  Defendant Nurse Reichert made the initial diagnosis of arthritis and did not recommend any further evaluation "though plaintiff repeatedly returned to sick call."

Plaintiff initiated the administrative remedies procedure.[2] Defendants Warden Revell and the unnamed Director and Regional Director of the BOP during 2008/2009 were "made fully aware" of plaintiff's "pursuit for medical attention" through this administrative process.  However, the only response they provided was that he should to return to sick call.  He filed a BP-11, but received no response.

On June 10, 2009, plaintiff returned to sick call due to pain

[1]   Attachments to complaints may be considered part of the complaint.

[2]   Plaintiff's exhibit D attached to his complaint shows that he submitted an administrative remedy that was received on November 3, 2008.

and swelling, and x-rays were taken but no further tests were done.[3] Shortly thereafter he was transferred to another institution.

On August 12, 2009, upon intake at the USPL plaintiff was screened by defendant Dr. McCollum, explained what he had gone through, and stated that he was still experiencing pain and limited mobility.  Dr. McCollum failed to examine plaintiff's knee during the screening process.[4]  Dr. McCollum said he would review the situation but never got back to plaintiff and discontinued all his medications.

In November 2009, plaintiff complained to defendant Warden Chester at "Mainline," and was advised to return to sick call.

On March 12, 2010, plaintiff returned to sick call where medial meniscus tenderness was noted by Nurse Pettit who requested an "ortho consult."[5]  "Several months later," plaintiff met with an orthopedic surgeon who immediately diagnosed an injury and requested an MRI.

---

[3]    Plaintiff's Exhibit E is of an examination on this date.  It shows that he complained of aching knee and shoulder pain, with no history of trauma.  The details of the examination of his shoulder and knee are provided, and indicate that his gait and posture were normal.  He was diagnosed with chronic pain.  This exhibit also shows that new lab and radiology tests on his knee and shoulder were requested and medication was prescribed.  Exhibit F is a Radiology Report showing findings as to plaintiff's chronic knee pain: "Negative except for: right knee: small enthesophyte arising from anterior/superior aspect of patella; chronic healed fx of distal femur."

[4]    Plaintiff's Exhibit G shows that on August 12, 2009, he was examined during a Chronic Care Visit by Dr. McCollum who found no history of trauma, discontinued aspirin that plaintiff had not been taking, and advised him "to report to sick call for a sore right knee and right shoulder."

[5]    Plaintiff's Exhibit H indicates he reported that he had twisted his right knee while jogging two years earlier.  He complained that he felt "a balloon sensation when knee is bent all the way" and a "tearing with every step."  The examination revealed tenderness upon palpitation.

The MRI showed a "Medial Meniscus Tear," and an arthroscopy was ordered, which showed cartilage damage.  The meniscus tear and cartilage damage caused varied swelling and a "steady, constant pronounced limp" so that the "need for medical attention was obvious even to a lay person."  On May 24, 2011, "corrective surgery was finally performed."

Based on the foregoing allegations, plaintiff claims that he sought and was denied medical treatment and suffered "substantial and sustained physical pain" as well as mental/emotional stress for "more than three years" in violation of his rights under the Eighth Amendment.  He claims that each defendant acting in their individual capacity had "first hand knowledge" of his "quest" for medical treatment and showed deliberate indifference.  He seeks compensatory and punitive damages totaling $650,000.

**SCREENING**

Because Mr. Huber is a prisoner suing government officials, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).   A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94

(2007).  Nevertheless, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).  The court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  Nevertheless, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 558 (2007).  To avoid dismissal, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level," and there must be "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  The complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555.  Having screened all materials filed, the court finds that the complaint is subject to being dismissed for the following reasons.

**FAILURE TO STATE FACTS TO SUPPORT A CLAIM UNDER THE EIGHTH AMENDMENT**

The court finds that the allegations in the complaint, taken as true, fail to state an Eighth Amendment claim of denial of medical

6

treatment.  The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)("A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment."). The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). To meet the objective component, the inmate must show the presence of a "serious medical need," that is, "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez*, 430 F.3d at 1304 (citing *Sealock v. Colorado*, 218 F.3d 1205,

1209 (10th Cir. 2000)).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).  It follows that an inadvertent failure to provide adequate medical care or a negligent diagnosis "fail[s] to establish the requisite culpable state of mind." *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind."  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 105-106 (footnote omitted).  Moreover, a claim of total denial of medical care differs from a claim of inadequacy of medical care. *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968).  Where the complaint alleges a "series of sick calls,

examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976).  Furthermore, in situations where treatment was delayed rather than denied altogether, the Tenth Circuit Court of Appeals requires that the inmate suffer "substantial harm" as a result of the delay.  *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).  In cases involving allegations of missed diagnoses or delayed treatment, the Tenth Circuit has explained that plaintiffs may establish liability by showing:

> (1) a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral, e.g., a family doctor knows that the patient needs delicate hand surgery requiring a specialist but instead of issuing the referral performs the operation himself; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, e.g., a gangrenous hand or a serious laceration; [or] (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, e.g., a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell.

*Boyett v. County of Washington*, 282 Fed.Appx. 667, 673 (10th Cir.)(unpublished opinion cited for reasoning), *cert. denied*, 555 U.S. 1049 (2008)(quoting *Self v. Crum*, 439 F.3d 1227, 1232 (10th 2006), *cert. denied*, 549 U.S. 856 (2006)).

Mr. Huber's allegations and exhibits indicate that he was

provided, rather than denied, medical attention every time he went to sick call.  His complaint at most describes a possibly negligent initial misdiagnosis and a delay in effective treatment. Plaintiff's allegations and exhibits do not show that any defendant recognized his or her inability to treat but neglected to refer or was presented with recognizable symptoms but completely denied care. Plaintiff's statement that his condition was so obvious that even a lay person would recognize it is a formulaic recitation without facts in support and is contradicted by the observations of various medical providers and test results set forth in the partial medical record provided by plaintiff.  The symptoms he describes of knee pain and a limp may be caused by various disorders or injuries including arthritis.

Plaintiff's allegations regarding Dr. McCollum, read together with his exhibits of the examination actually conducted and advice given by this defendant, show that Dr. McCollum did not refuse to provide him with medical care.  Instead, Dr. McCollum conducted a general examination of Mr. Huber and told him to report to sick call for his knee pain.  If plaintiff failed to take McCollum's advice to go to sick call until 7 months after it was given, that time without treatment cannot be attributed to Dr. McCollum.  Plaintiff's exhibits also reveal that Dr. McCollum's alleged discontinuance of all plaintiff's medication amounted to his stopping aspirin that plaintiff had not been taking.  The court finds that the complaint

10

utterly fails to state a claim of denial of necessary medical treatment against Dr. McCollum.

Likewise, plaintiff's allegations regarding the acts or inactions of defendants USPF Warden Revell, USPL Warden Chester, unnamed BOP Regional Director, and unnamed BOP Director fail to state an Eighth Amendment claim.  Plaintiff's only factual allegation against defendant Warden Chester is that Chester advised him to go to sick call for his knee pain.  This can hardly be characterized as a denial of medical care by defendant Chester.  Plaintiff's allegations regarding defendant Warden Revell and the two unknown BOP officials in no way suggest that plaintiff requested necessary medical attention from any of these individuals and that they were qualified or authorized to provide such care but refused to assess or diagnose and treat his symptoms.  Nor do they show that these individuals knew about and disregarded a substantial risk of serious harm to plaintiff.

Plaintiff appears to claim that the defendant wardens and the BOP officials should be held liable based upon their supervisory capacities.  He argues these defendants are the "most culpable" because they were "in a position of authority" to "police" the BOP through the administrative grievance process, and that they had the "power to ensure that (constitutional) violations" did not occur. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or

inactions upon which the complaint is based. *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)(affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants"). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). To be held liable under § 1331, a supervisor must have personally participated or acquiesced in the complained-of constitutional deprivation. *See Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). An "affirmative link" must exist between the constitutional deprivation and "either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Id.* at 1527. This link is satisfied if "a supervisor has established or utilized an unconstitutional policy or custom." *Id.* at 1528. Plaintiff does not describe any unconstitutional policy or custom. As the U.S. Supreme Court recently explained in *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009):

> [G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. Iqbal Brief 46 ("[I]t is undisputed that supervisory Bivens liability cannot be established solely on a theory of respondeat superior").

> See Monell v. New York City Dept. of Social Servs., 436
> U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)
> (finding no vicarious liability for a municipal "person"
> under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch
> 242, 269, 3 L.Ed. 329 (1812) (a federal official's
> liability "will only result from his own neglect in not
> properly superintending the discharge" of his
> subordinates' duties); Robertson v. Sichel, 127 U.S. 507,
> 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer
> or agent is not responsible for the misfeasances or
> position wrongs, or for the nonfeasances, or negligences,
> or omissions of duty, of the subagents or servants or other
> persons properly employed by or under him, in the discharge
> of his official duties").  Because vicarious liability is
> inapplicable to Bivens and § 1983 suits, a plaintiff must
> plead that each Government-official defendant, through
> the official's own individual actions, has violated the
> Constitution.

*Id.*  Plaintiff's statement that the two wardens and the BOP Director and Regional Director "acquiesced" in the alleged denial of medical treatment when they failed to afford him relief through the administrative remedy process is simply not sufficient to show the personal participation of each of these supervisory officials in the alleged previous denial of medical treatment at the hands of the medical personnel from whom plaintiff actually requested and received treatment for his symptoms.

The court finds that plaintiff fails to allege facts sufficient to state a claim under the Eighth Amendment as against defendants McCollum, Chester, Revell, and the two unknown BOP officials in particular; and fails to state an Eighth Amendment claim in general. Plaintiff is given time to allege additional facts against each of these defendants and regarding his treatment in general that are

sufficient to state an Eighth Amendment claim.  If he fails to allege additional sufficient facts, this action may be dismissed as against these defendants without further notice.

## LACK OF JURISDICTION OVER SOME DEFENDANTS

The only defendant whose acts described in the complaint include her having examined plaintiff's knee pain symptoms upon presentation at sick call and her allegedly not having provided adequate treatment is defendant Nurse Reichert.  However, plaintiff does not allege facts or provide authority showing that this court has personal jurisdiction over defendant Reichert or Warden Revell who were employed at the USPF, or the unknown BOP Regional Director and unknown BOP Director, who were also employed outside this district.  If plaintiff fails to allege additional facts or provide authority indicating that this court has personal jurisdiction over these defendants within the time allotted to respond herein, this action may be dismissed as against them for lack of jurisdiction without further notice.

## STATUTE OF LIMITATIONS BAR

A two-year statute of limitations is applicable to civil rights claims.  Under this law, plaintiff is barred from bringing claims based on events that occurred more than two years prior to the filing of his complaint.  He executed his complaint on July 23, 2012.  It

follows that acts or inactions of defendants that took place in 2008 and 2009 are time-barred.  It appears from the face of the complaint in this case that most, if not all, plaintiff's claims were not brought within that two-year time limit.  Plaintiff alleges that he was injured and first sought medical attention in April 2008 and that Nurse Reichert misdiagnosed and failed to properly treat his knee condition in April 2008 and again in June 2009.  Thus, even if he can establish jurisdiction over defendant Reichert, his claims based upon her acts are clearly out of time.  He also alleges that he filed administrative remedies complaining to Warden Revell and other BOP officials regarding the alleged denial of medical treatment in 2008 and 2009.  These claims are also clearly time-barred.

The only defendants whose acts were taken within two years of the filing of plaintiff's complaint are Warden Chester and Dr. McCollum.  However, the court has already discussed that plaintiff has not alleged sufficient facts to state a claim of denial of medical treatment against these two defendants.

Plaintiff is given time to show cause why this action should not be dismissed as time-barred because the only facts he alleges that might present a claim of denial of medical care against named defendants occurred more than two years before he filed this complaint.  If plaintiff fails to allege sufficient additional facts, this action may be dismissed as time-barred without further notice.

**PLAINTIFF ORDERED TO SHOW CAUSE**

Plaintiff is given time to show cause why this action should not be dismissed for all the foregoing reasons.  If he fails to show good cause within the time allotted, this action may be dismissed without further notice.

**MOTION TO SERVE**

The court has considered plaintiff's Motion to Serve Defendants through the Federal BOP (Doc. 3).  In this motion, plaintiff "seeks to perfect service" of his complaint and "all other filings in this case" through the BOP "headquarters in Washington."  His reasons include that all defendants either are or were employed by the BOP and may have moved or retired without plaintiff's knowledge.  He asks the court to order that service is complete upon mailing of all materials to the BOP.  Plaintiff provides no authority for this deviation from the rules enacted by Congress with respect to service of process.  Since he refers to the acts of defendants taken in their individual capacities only, each defendant will have to be personally served if this action survives screening.  Accordingly, this motion is denied.

**IS THEREFORE BY THE COURT ORDERED** that plaintiff is granted thirty (30) days in which to submit to the court an initial partial filing fee of $ 12.00.  Any objection to this order must be filed

on or before the date payment is due.  The failure to pay the fees as required herein may result in dismissal of this action without prejudice.

**IT IS FURTHER ORDERED** that within the same thirty-day time period plaintiff is required to show cause why this action should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Serve Defendants through the Federal Bureau of Prisons (Doc. 3) is denied.

**IT IS SO ORDERED**.

Dated this 17th day of October, 2012, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge